W. R. Williams v. The State.

No. 2550.   Decided December 3, 1902.

1.—Aggravated Assault—Two Transactions—Election by State.

On a trial for aggravated assault by defendant upon a female school-teacher, where defendant was charged with acting together with his two daughters in making the assault, and it appeared that there were two assaults, one by each of his two daughters, occurring at an interval between them of about fifteen minutes, defendant not being present at the first assault, it was error to refuse defendant's motion to have the State elect as to the assault upon which the conviction would be sought.

2.—Same—Defense of Another—Charge.

On a trial for aggravated assault upon a schoolteacher by defendant and his daughters, where it appeared that when defendant approached the scene his daughters were surrounded in angry altercation by the teacher and her other scholars, one of whom, a youth of 17 years, was flourishing a club in a threatening manner; Held, defendant had the right to protect his daughters, as he viewed the situation, although his daughters may have been originally in the wrong, and the court erred in not submitting this phase of the case in the charge to the jury.

3.—Same—Verdict.

On a trial for aggravated assault, where both degrees were submitted in the charge, and the verdict was a general one assessing a fine of $25, which is the minimum punishment for aggravated and the maximum punishment for simple assault; Held, the verdict should have specified the offense.

Appeal from the County Court of Smith.   Tried below before Hon. George W. Cross, County Judge.

Appeal from a conviction of assault; penalty, a fine of $25.

The opinion states the case.

*J. A. Bulloch,* for appellant, filed an able and elaborate brief.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was charged with an aggravated assault upon Lena Barnes.   The allegations charged that he and Mittie and Lela Williams acted together in committing the assault. The facts disclose that the son of appellant had been expelled from the public school by the teacher Lena Barnes.   Appellant had called on Miss Barnes as to the cause of the expulsion.   Miss Barnes referred him to the other two members of the board of trustees, appellant being the third member.   He left in search of these gentlemen.   During his absence his two daughters, Mittie and Lela, went to the church near by the schoolhouse, and took their seats upon the doorstep.   Miss Barnes sent witness Dark with an invitation to them to call on her in the schoolroom, which they declined.   In a few moments the school closed for the day, and Miss Barnes requested the school to accompany her to an interview with appellant's daughters.   This resulted in a personal encounter between Mittie Williams and Miss Barnes.   Somewhere from ten to fifteen minutes after the cessation of this difficulty, and while the parties were still engaged in more or less angry conversation, appellant approached the scene.   His elder son was present, and the witness Dark

was using some very unbecoming language in reference to the Williams family, and appellant chided his son for not protecting his daughters from the insults. One word brought on another, until another personal difficulty occurred between Lela Williams and Miss Barnes. During this altercation, either immediately preceding or during the fight, appellant was heard to say, "hit her;" or, "Double up your fist and hit." This, it is claimed, was intended to encourage his daughter in the difficulty. The court tried the case upon the theory that the two fights constituted a continuous transaction and only one offense. It is clear from the testimony that appellant was not present when the first difficulty occurred. It is clear that there was fifteen minutes or more elapsing between the difficulties, and that appellant reached the scene of the trouble just before the second fight. Under this testimony, the State has not shown any criminal connection of appellant with the fight between Miss Barnes and his daughter Mittie, and it is equally clear that there were two fights at an interval of fifteen or more minutes. Appellant sought to take advantage of this, when the State rested its case, by making a motion to require an election as to the transaction upon which the conviction would be sought. This was refused. At the conclusion of the introduction of all the evidence this motion was renewed, and this was followed up still later with a charge. The election as to the transaction should have been required. Larned v. State, 41 Texas Crim. Rep., 509; Batchelor v. State, 41 Texas Crim. Rep., 501; Fisher v. State, 33 Texas, 792; Lunn v. State, 44 Texas, 85. For this error the judgment of the court must be reversed.

There is another question, bearing upon self-defense. When appellant approached the scene of the trouble he found his two daughters and his son surrounded by Miss Barnes and her school children, among others Dark, about 17 years old, a friend of Miss Barnes, who was armed with a club, and using very unbecoming and insulting language directed against the Williams family. Appellant came upon the scene with this picture before him, and with this language being used, and chided his son for not protecting his sisters. Dark immediately threatened to "blow a hole in him through which a jay bird could crawl." Appellant while waiting for the school trustees was some distance away, heard loud cursing and swearing in the direction of the school, and thought it was a man's voice. When he got in sight of the crowd he saw the witness Dark with a stick drawn, and ran to where they were. They were all talking and very much excited. Dark, with an uplifted stick, was cursing and swearing. He asked his son why he permitted such treatment of his sisters, and Dark began cursing appellant, who told him that he was a boy and he would not strike him. Appellant further testifies: "At the time I got there, and from what I saw and heard, I was excited, and thought they had all been or was about to attack my girls. I told one of them they could whip her if they wanted to, and Lela and Miss Barnes went to fighting. At the time I spoke, Miss Barnes was talking to Lela and pointing her finger in her face. While

they were fighting, I told Lela to double up her fist. I do not know whether she heard me or not either time." The substance of the further testimony of defendant is to the effect that he thought his girls were being imposed upon, from what he could see as he approached, and that Dark was preventing his daughters from protecting themselves against the assault of Miss Barnes. If this testimony is true, or is believed by the appellant to be true, he would be guilty of no offense. If, when he came upon the scene, he found the witness Dark in the position of using the uplifted club, and cursing and swearing, etc., he was justified in doing all that he did, and he would have been justified in going further. He had a right to protect his daughters as he viewed the situation, although his daughters may have been originally in the wrong. Guffee v. State, 8 Texas Crim, App., 187. Appellant's case must be viewed from his standpoint, and if at the time it appeared to him, though it was not a fact, as he approached the scene, that the witness Dark and Miss Barnes, and the other children, one or all of them, were making an attack upon his daughters, or that Dark was using the club in a threatening manner towards his daughters, and encouraging Miss Barnes in what appeared to defendant to be an attack upon his daughters, he would be justified, not only in what he did, but would have been further justified in using any reasonable force to repel the attack or seeming attack upon his daughters. If what appellant testified be true, the witness Dark at the time was committing an assault upon his daughters with a club; at least was using the club in a threatening manner, as if to strike, which would have been an assault. This phase of the case should have been submitted by the court's charge.

There is a question raised with reference to the sufficiency of the verdict. It does not specify the degree of assault of which appellant was convicted. The law in regard to aggravated and simple assault was given in the charge. The jury returned a general verdict of guilty, and assessed the punishment at $25, which is the minimum punishment for aggravated assault and the maximum punishment for simple assault. Upon another trial the jury should, if they convict, be required to specify the offense of which appellant is convicted.

For the errors discussed, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*